UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PAULA J. PERRY,

                Plaintiff,          Civil Action No. 17-cv-13386

                                      Honorable Stephen J. Murphy III

v.                               Magistrate Judge David R. Grand

ACTING COMMISSIONER OF
SOCIAL SECURITY,

                Defendant.

_____/

## REPORT AND RECOMMENDATION TO DENY DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [14] AND GRANT PLAINTIFF'S MOTION FOR REMAND [12]

Plaintiff Paula Perry ("Perry") brings this action pursuant to 42 U.S.C. § 405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying her applications for Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act"). The Commissioner filed a summary judgment motion, while Perry filed a motion for remand (Docs. #12, #14), which have been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

## I.    RECOMMENDATION

For the reasons set forth below, the Court finds that substantial evidence does not support the Administrative Law Judge's ("ALJ") conclusion that Perry is not

disabled under the Act.   Accordingly, the Court **RECOMMENDS** that the Commissioner's Motion for Summary Judgment (**Doc. #14**) be **DENIED**, Perry's Motion for Remand (**Doc. #12**) be **GRANTED,** and that pursuant to sentence four of 42 U.S.C. § 405(g), the ALJ's decision be **REMANDED**.

## II.   REPORT

### A.   Background

Perry was born on March 22,1954, and was 59 years old at the time of her alleged onset date.  (Tr. 38).  She is college educated, and has a nursing degree.  (*Id.*). Perry worked as a nurse for about 39 years before she applied for disability.  (Tr. 39).  She worked as an infusion nurse and a "floor" nurse, in both intensive care and outpatient care units, doing a variety of tasks, including IV infusions, injections, patient care, and paperwork.  (Tr. 40).

She alleges disability as a result of arthritis, knee degenerative bilateral, osteoarthritis in hands, lumbago/osteoarthritis in lumbar spine with myelopathy, sleep apnea, ringing in ears, and neck, shoulders, and left elbow pain.  (Tr. 150). Since 2010, Perry has obtained ongoing treatment for the pain in her back, joints, upper, and lower extremities.

Perry filed for DIB on December 28, 2014, alleging disability beginning January 16, 2014.  (Tr. 128-29).  Perry's application was denied initially on March 25, 2015.  (Tr. 56-69).  She then requested a hearing, which was held on September

7, 2016, before Administrative Law Judge ("ALJ") Thomas Walters.  (Tr. 76-77, 34-55).  Perry testified at the hearing, represented by counsel Patrick Marutiak, as did Toni McFarland, an impartial vocational expert ("VE").  (Tr. 34-55).  The ALJ issued a decision on October 5, 2016, finding Perry not disabled.  (Tr. 18-33).  Perry requested review of the ALJ's decision, which the Appeals Council denied on August 25, 2017.  (Tr. 1-8).  Perry timely filed for judicial review of the final decision on October 17, 2017.  (Doc. #1).

The Court has thoroughly reviewed the transcript in this matter, including Perry's medical record, Function and Disability Reports, and testimony as to her conditions and resulting limitations.  Instead of summarizing that information here, the Court will make references and provide citations to the transcript as necessary in its discussion of the parties' arguments.

### B.    The ALJ's Application of the Disability Framework Analysis

Under the Act, DIB are available only for those who have a "disability."  *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).  The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  The

Commissioner's regulations provide that a disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two:  If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three:  If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.
>
> Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five:  Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Scheuneman v. Comm'r of Soc. Sec.*, 2011 WL 6937331, at *7 (E.D. Mich. Dec. 6, 2011) (citing 20 C.F.R. § 404.1520); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001).  "The burden of proof is on the claimant throughout the first four steps ….  If the analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [defendant]."  *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Following this five-step sequential analysis, the ALJ found, at Step One, that Perry had not engaged in substantial gainful activity since January 16, 2014, the alleged onset date. (Tr. 23). At Step Two, the ALJ found Perry had the following severe impairments: arthritis, obesity and degenerative disc disease. (*Id.*). At Step Three, the ALJ found Perry did not have an impairment, or combination of impairments, that met or medically equaled a listed impairment. (Tr. 24). The ALJ then found that Perry has the residual functional capacity ("RFC") to perform sedentary work "as defined in 20 CFR 404.1567(a) except that [Perry] can occasionally bend, turn, crouch, stoop, climb, crawl or kneel. She can do no walking beyond one city block. [Perry] can frequently finger and handle." (Tr. 25). At Step Four, the ALJ found Perry is unable to perform any past relevant work. (Tr. 26). At Step Five, considering Perry's age, education, work experience, and RFC, the ALJ found Perry has acquired transferable work skills from past relevant work such that she could perform other work in the national economy, including nurse consultant, medical case manager, school nurse, and office nurse, as the VE testified. (Tr. 27-28). Accordingly, the ALJ concluded that Perry is not disabled under the Act. (*Id.*).

## C.    Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions

absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotations omitted).  In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007).

When reviewing the Commissioner's factual findings, the court is limited to an examination of the record and must consider the record as a whole.  (*See Bass*, 499 F.3d at 512-13; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992)).  The court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ.  (*Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989)).  There is no requirement, however, that either the ALJ or this court discuss every piece of evidence in the administrative record.  (*See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a

party.") (internal quotations omitted)).  If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion."  *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted).

### D.    Analysis

In her motion for remand, Perry argues that the ALJ erred in considering the opinion of her treating physician, Sanjeev Prakash, M.D., a rheumatologist.[1]  For the reasons set forth below, the Court agrees, and remand is required.

### 1. *The ALJ Violated the Treating Physician Rule as to Dr. Prakash's August 2014 Opinion, Requiring Remand*

From 2013 until 2014, Dr. Prakash treated Perry for her joint pain and arthritic conditions.  (Tr. 244-48, 281-303).  Dr. Prakash issued two opinions regard Perry's limitations.  The first, dated March 13, 2014, was within a treatment note ("March opinion").  (Tr. 285).  Within that note, Dr. Prakash introduced Perry's active complaints, conditions, and side effects of medication, and then provided in full,

> I agree, because of severe arthritis in her knees, she will not be able kneel on the floor and to resuscitate dictation and standing for 8 to 10 hours a day may be difficult and based on that, I will fill in her temporary disability papers.  However, I told her that this arthritis

---

[1] Perry also argues that the ALJ erred in considering the treating source opinion of another of her physicians, Patricia Cagnoli, M.D., and failed to comply with SSR 96-8p.  However, because the Court is recommending remand on other grounds, it need not address the merits of these arguments.  On remand, however, the ALJ should carefully consider those issues.

can be treated to some extent, and she may be able to do office-based
nursing job.  But I doubt that she will be able to continue working in
the infusion center, where she has to stand at 10 hours per day.

(Tr. 285).

Several months later, on August 12, 2014, Dr. Prakash completed a more
detailed, multi-page function report about Perry's limitations ("August opinion").
(244-48).  In that opinion, Dr. Prakash first noted Perry's pain, stiffness, diagnoses,
and treatments.  (Tr. 244-45).  He opined, "she has severe arthritis in the knee joints
which prevents her from standing for more than an hour[2].  And also kneeling."  (Tr.
245).  Next, he opined that Perry cannot stand and/or sit upright for six to eight hours
"because of the arthritis in her knees, wrists, hands, shoulders and back," and she is
required to lie down during the day.  (Tr. 246).  He then issued the following
additional limitations: she can consistently reach up above the shoulders; she can
frequently reach down to waist level, she can rarely reach down to the floor; she can
consistently handle objects and with fingers; she can lift and carry 21-50 pounds
"regularly/daily"; and "[h]er disability prevents her from lifting more than 20 pounds
on [a] consistent basis, pushing and pulling".  (Tr. 246-47).  Dr. Prakash found Perry
had difficulty bending, squatting, kneeling, and turning.  (Tr. 247).  Referencing the
medical records, Dr. Prakash opined that Perry is credible, and explained that there

---

[2] He also opined that Perry could stand "not more than 30 minutes at a time, and not more than 2
hours a day."  (Tr. 245).  These limitations may or may not be internally inconsistent, but that is a
matter for the ALJ to address on remand.

are objective medical reasons for her pain; specifically, "findings of arthritis in joints and back[]." (Tr. 248). Lastly, he opined, "[b]ecause of her spondylartritis, I do not think she will be able to work as an infusion nurse, where she has to stand for several hours and [handle] heavy patients... She may be able to do [a] desk job part time where she does not have to stand or lift heavy objects." (Tr. 248).

The ALJ gave Dr. Prakash's March opinion "great weight," because it "is consistent with the record as a whole." (Tr. 26). But, the ALJ did not mention Dr. Prakash's subsequent, more detailed August opinion, writing simply:

> In March 2014, Dr. Prakash opined that he doubted that [Perry] was able to continue working in the infusion center, where she had to stand 10 hours a day. He further opined that [Perry] might be able to do office-based nursing job. [ ] This opinion is consistent with the record as a whole. [Perry] is limited to sedentary work due to her arthritis in knees. Therefore, the undersigned gives this opinion great weight.

(*Id.*).

Perry argues that the ALJ violated the treating physician rule in his handling of Dr. Prakash's August 2014 opinion. The Commissioner admits that "the ALJ did not discuss Dr. Prakash's August 2014 RFC form," but argues "any error is harmless because his opinion regarding the additional limitations is patently deficient under Sixth Circuit precedent." (Doc. #13 at 10). The Court disagrees that such error was harmless, and finds remand proper.

An ALJ must give the opinion of a treating source controlling weight if he finds the opinion "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). 20 C.F.R. § 404.1527 further provides,

> Generally, we give more weight to medical opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.

20 C.F.R. § 404.1527.

This "treating source rule," codified 20 C.F.R. § 404.1527, and well-established in case law, also requires the ALJ to "always give good reasons in [the] notice of determination or decision for the weight given to the claimant's treating source's opinion." *Blakley v. Comm'r Of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (citing 20 C.F.R. § 404.1527(d)(2)). If the ALJ does not afford a treating source's opinion controlling weight, the ALJ must "must apply certain factors—namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source—in determining what weight to give the opinion." *Wilson,* 378 F.3d at 544; *see also* 20

C.F.R. § 404.1527(c).  This procedural requirement has two primary purposes: to "let claimants understand the disposition of their cases [ ] and (2) to ensure that the ALJ applies the treating-source rule and that the ALJ's application of the rule can be meaningfully reviewed."  *Wilson,* 378 F.3d at 546.  Failure to provide "good reasons" for rejecting the opinion of a treating source generally requires remand, even if "a different outcome on remand is unlikely."  *Id.*

Here, the ALJ's decision violated the treating physician rule, as the ALJ did not mention any reason, let alone any "good reasons," for the weight given to Dr. Prakash's August opinion.  Although arguing, in a footnote, that the ALJ "considered the opinion, as evidenced by the ALJ's reference to Exhibit 2F (Tr. 198-248) elsewhere in the decision and in the list of exhibits," the Commissioner impliedly acknowledges the ALJ did not mention Dr. Prakash's August opinion anywhere in his actual analysis.  (Doc. #14 at 14).  Moreover, the ALJ did not specify what, if any, weight was given to Dr. Prakash's August opinion, as opposed to his March opinion.  Facially, this constitutes a clear violation of the treating physician rule.  The only remaining question is whether this error is harmless, or instead, requires a remand.

Typically, reversal is required "when a treating physician's opinion was ignored and no reasons for doing so were provided."  *Bass v. McMahon*, 499 F.3d 506, 512 (6th Cir. 2007).  Notwithstanding this general rule, remand may not be

required if " the error is a harmless *de minimis* procedural violation." *Blakley,* 581 F.3d at 409.  A "*de minimis* violation [of the treating physician rule] may qualify as harmless error, for instance, if a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it." *Wilson*, 378 F.3d at 547.  The Commissioner's argument that this is the case here is not persuasive.

Dr. Prakash's August opinion provides adequate detail to surpass the low "patently deficient" threshold.  Moreover, the ALJ's violation of the treating physician rule produces uncertainties, and apparent contradictions within the RFC, such that substantial evidence does not support the ALJ's decision.

### Dr. Prakash's August Opinion is Not "Patently Deficient"

The Commissioner characterizes Dr. Prakash's August opinion as "patently deficient," arguing, "[a] check-box form without any supporting explanation, such as that completed by Dr. Prakash (see Tr. 244-48), meets the Sixth Circuit's patently deficient standard.  []" (Tr. 245).  But, the Commissioner's sweeping generalization lacks merit.

First, Dr. Prakash's August opinion was not simply a check box form, with no written support whatsoever.  Rather, Dr. Prakash wrote several explanations for his answers.  For example, Dr. Prakash wrote that the reason Perry cannot stand and/or sit upright for six to eight hours is "because of the arthritis in her knees, wrists, hands, shoulders and back." (Tr. 246).  He explained that Perry must lie down during the

12

day because "[t]he pain in her back is increased by compression load, that is standing and walking.  Lying down takes the compression load off the back and helps the pain." (Tr. 246).  As another example, Dr. Prakash clarified, "[b]efore she had knee injections, she could not walk more than a half mile.  I don't know how she is responding to the knee injections and whether she can walk more now." (*Id.*). Further, he also wrote that objective medical reasons for Perry's pain show "findings of arthritis in joints and back[]."  (Tr. 248).  While Dr. Prakash's explanatory sentences could have been more detailed, his opinion is nonetheless distinct from those that are simply check-boxes, with no additional explanation whatsoever. *See Hernandez v. Comm'r of Soc. Sec.*, 644 F. App'x 468, 474 (6th Cir. 2016) (holding that a "patently deficient" opinion is one "not accompanied by any explanation.").[3]

Second, "if a treating physician's opinion is consistent with the objective medical evidence, the opinion is not patently deficient." *Sisk v. Astrue*, No. 1:09-CV-220, 2010 WL 3522307, at *9 (E.D. Tenn. Aug. 20, 2010), *report and recommendation adopted*, No. 1:09-CV-220, 2010 WL 3522306 (E.D. Tenn. Sept. 8, 2010).  Here, at least some objective medical evidence appears to support Dr.

---

[3] The cases cited by the Commissioner are inapposite. For example, in *Coldiron v. Comm'r of Soc. Sec.,* the ALJ addressed the treating physician's opinion at issue, whereas here, the ALJ ignored it entirely.  391 F. App'x 435, 440 (6th Cir. 2010).  Further, in *Coldiron*, the Sixth Circuit agreed with the ALJ that the physician's opinion at issue was "too inconsistent and unclear to be helpful," where the physician wrote that the claimant's obesity, not the heart condition for which he was treating the claimant, accounted for all limitations. (*Id.*).  Clearly, this is distinct from the opinion at issue, in which Dr. Prakash, a rheumatologist, provided opinions about the conditions for which he treated Perry.

Prakash's August opinion.  Several objective medical test results, including X-rays and MRIs, confirm Perry's conditions, which Dr. Prakash explain cause her symptoms and resulting limitations.  (Tr. 272, 273, 275).  Objective reports also note the following: "moderate to severe changes of right knee osteoarthritis;" "[Perry] complaining of same pattern on pain on knees consistent with knee osteoarthritis confirmed by X-rays.  MRI has proven advanced cartilage damages on left knee;" (Tr. 275); "All the symptoms are consistent with lumbar spine osteoarthritis," (*Id.*); "diffuse disc bulge, facet hypertrophy… minimal anterolisthesis, small broad based central disc protrusion," (Tr. 202); and multiple reports demonstrating Perry has abnormal ranges of motions in her upper and lower extremities.  (Tr. 255, 256, 259, 260-61, 273, 275).  Perry's PT notes from September 30, 2014 (only about a month after Dr. Prakash issued his August opinion) are also consistent with Dr. Prakash's August opinion.  (Tr. 326-334).  On September 30, 2014, physical therapist Robert Myers noted that Perry "has decreased sitting tolerance," and "a slow antalgic gait pattern with considerable limp favoring her right leg."  (Tr. 326-27).  Perry underwent a six minute walk test, which revealed "significant limitation" in walking, according to her physical therapist.  (*Id.*).[4]

---

[4] The Court recognizes that the record contains some evidence that is arguably inconsistent with Dr. Prakash's opinion.  For example, Dr. Prakash diagnosed Perry with "psoriatic arthritis," an opinion with which Perry's other doctor, Dr. Diaz, apparently disagreed.  (Tr. 42).  But again, the ALJ did not address Dr. Prakash's August opinion at all, and it is not for this Court to weigh the competing evidence or speculate how it may impact the ALJ's analysis.  *See Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414 (6th Cir. 2011) ("This court reviews the entire administrative

The Commissioner's other arguments do not alter the analysis.  Citing the portion of Dr. Prakash's August opinion in which he wrote that Perry "may be able to do [a] desk job part time where she does not have to stand or lift heavy objects" (Tr. 248), the Commissioner argues that the doctor "did not indicate that part-time work was the maximum that that she could do . . ."  (Doc. #14 at 16).  Yet, taken in context with the rest of the opinion, one could certainly interpret Dr. Prakash to be saying exactly that.  Moreover, the Commissioner's argument constitutes improper *post hoc* rationalization and speculation as to how the ALJ would have construed this sentence.  *See Schroeder v. Comm'r of Soc. Sec.*, *supra*.

The Commissioner also argues that because the ability to work, full or part-time, is an opinion reserved to the Commissioner, the ALJ need not "give it controlling weight or give good reasons why controlling weight is not warranted." (Doc. #14 at 16).  While it is true that the ALJ need not give weight to such an opinion, here, the ALJ simply ignored it.  In *Fisher v. Colvin,* this Court held, "[a]lthough the question of whether a claimant is limited to only part-time work is ultimately one reserved to the Commissioner, (SSR 96–5p, 1996 SSR LEXIS 2, at *5–6 (1996 WL 374183, at *2 (July 2, 1996))), the regulations are clear that the ALJ

---

record, but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ.").  Rather, on remand, the ALJ shall determine how much weight to give Dr. Prakash's August opinion, and explain the reasoning for that weight.

is nevertheless required to consider opinions on issues reserved to the Commissioner, and not simply ignore them." *Fisher v. Colvin*, No. CV 14-13516, 2015 WL 7251308, at *4 (E.D. Mich. Oct. 30, 2015), *report and recommendation adopted sub nom. Fisher v. Comm'r of Soc. Sec.*, No. 14-CV-13516, 2015 WL 7717164 (E.D. Mich. Nov. 30, 2015).  And, even if the ALJ could have rejected wholesale Dr. Prakash's opinion about part-time work, the real issue here is that the ALJ ignored not only that portion of the doctor's opinion, but his entire August opinion.

Finally, the Commissioner argues that "[t]he ALJ's reasons for rejecting the 'work preclusive limitations' assigned by Dr. Patricia Cagnoli undermine the limitations assigned by Dr. Prakash and make clear the basis on which the treating physician's opinion was rejected."  (Doc. #14 at 17).  Dr. Cagnoli was Perry's treating rheumatologist in 2015, after Dr. Prakash.  (Tr. 335-57).  Dr. Cagnoli issued a highly restrictive opinion as to Perry's limitations on November 18, 2015.  (Tr. 338).  The Commissioner's *post-hoc* analysis of the two doctor's opinions is unpersuasive.  *See Schroeder v. Comm'r of Soc. Sec.*, No. 11-14778, 2013 U.S. Dist. LEXIS 45648, 2013 WL 1316748, at *13 (E.D. Mich. Mar. 1, 2013) (Commissioner's "post hoc rationalization is not an acceptable substitute for the ALJ's lack of rationale").  The Commissioner essentially asks this Court to speculate as to the ALJ's reasons for discrediting Dr. Prakash's opinion, which violates the

treating physician rule's very purpose – "to let claimants understand the disposition of their cases [ ] and (2) to ensure that the ALJ applies the treating-source rule and that the ALJ's application of the rule can be meaningfully reviewed." *Wilson,* 378 F.3d at 546.

Moreover, the significant dissimilarities between Dr. Cagnoli's opinion and Dr. Prakash's August opinion further highlights the need for the ALJ to weigh them in the first instance.  For instance, Dr. Cagnoli opined that Perry's ability to maintain attention and concentration on work tasks throughout an 8-hour day is significantly compromised by pain, prescribed medication, or both.  (Tr. 338).  Dr. Prakash offered no similar opinion.  Dr. Cagnoli appeared to provide more restrictive limitations in Perry's fingering, handling, and reaching.  (*Id.*).  Dr. Cagnoli opined that Perry could never reach, never climb a ladder, never kneel, and never stoop, while Dr. Prakash again offered no similar opinions.  (Tr. 337).  Dr. Cagnoli further opined that Perry could occasionally lift less than 10 pounds, and could not frequently lift any amount of weight, whereas Dr. Prakash opined that Perry could lift 21-50 pounds regularly, but could not lift 20 pounds "on a consistent basis pushing and pulling."  (Tr. 336, 246-47).  Finally, Dr. Cagnoli treated Perry after Dr. Prakash issued his August opinion; Dr. Cagnoli completed his opinion on November 18, 2015, which was roughly 1.5 years after Dr. Prakash completed his August opinion.  (Tr. 338).  The Commissioner's argument asks the Court to weigh the

competing opinions, but that is simply not the Court's proper role in reviewing the ALJ's decision.  *See Reynolds*, 424 F. App'x at 414 ("This court reviews the entire administrative record, but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ.").

### The ALJ's Error Produces Uncertainties and Apparent Contradictions in the RFC

The ALJ's violation of the treating physician rule is also not harmless because it produces uncertainties, and apparent contradictions within the RFC.  As mentioned, in crafting Perry's RFC,  the ALJ gave "great weight" to Dr. Prakash's March opinion.  (Tr. 26).  The ALJ found Perry had the RFC:

> to perform sedentary work as defined in 20 CFR 404.1567(a) except that [Perry] can occasionally bend, turn, crouch, stoop, climb, crawl or kneel.  She can do no walking beyond one city block.  [Perry] can frequently finger and handle.

(Tr. 25).

Although the ALJ gave "great weight" to Dr. Prakash's March opinion in forming the RFC, Dr. Prakash's August opinion stands in stark contrast to the RFC, which exacerbates the ALJ's error in neglecting to mention the discrepancy.  For example, in August, Dr. Prakash opined that Perry is restricted in kneeling, sitting upright for six to eight hours, and she needs to lie down during the day due to her conditions.  (Tr. 244-48).  In March, Dr. Prakash did not impose any of these

limitations.  (Tr. 285).  By not mentioning the August opinion, the ALJ fails to resolve this discrepancy.

There is simply no way for this Court to reconcile his decision to give "great weight" to Dr. Prakash's March opinion, yet ignore Dr. Prakash's later-issued, more restrictive August opinion, which undermines his  RFC analysis.  Dr. Prakash's August opinion could be read to modify, clarify, or replace his March opinion, as Perry suggests in her response.  (Doc. #15 at 2-3).  If this is the case, the ALJ erred in relying on his "stale" opinion at the expense of his recent opinion.   This inconsistency, and uncertainty, calls for remand.  *See Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 748 (6th Cir. 2007) (noting that when an ALJ adopted assessments contrary to the treating physician's opinion without even mentioning the opinion, "this fact alone counsels strongly in favor of a remand.").

Clearly, then, "the record contains conflicting or inconclusive evidence not resolved by the ALJ," and it is "difficult or impossible to determine whether [this] error is harmless."  *M.G.,* 861 F. Supp. 2d at 861 (internal citations omitted).  The Court, therefore, "cannot engage in meaningful review of the ALJ's decision because [his] reasoning is not 'sufficiently specific.'"  *Blakley,* 581 F.3d at 409 (citing Soc. Sec. Rul. 96–2p, 1996 WL 374188, at *5).  As "the court is unable to review the ALJ's decision, and is instead left to speculate as to how the ALJ might have weighed that evidence," remand is required.  *See M.G.,* 861 F. Supp. 2d 846.

In sum, for all of the above reasons, and upon an independent review of the entire record, the Court concludes that the ALJ's decision is not supported by substantial evidence.  Remand is the most appropriate course of action.

## III.  CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that the Commissioner's Motion for Summary Judgment (**Doc. #14**) be **DENIED**, Perry's Motion for Remand (**Doc. #12**) be **GRANTED**, and that, pursuant to sentence four of 42 U.S.C. § 405(g), this case be **REMANDED** to the ALJ for further proceedings consistent with this Report and Recommendation.


Dated: January 23, 2019                     s/David R. Grand
Ann Arbor, Michigan                         DAVID R. GRAND
                                            United States Magistrate Judge


## <u>REVIEW</u>

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have

to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on January 23, 2019.

s/Eddrey O. Butts
EDDREY O. BUTTS
Case Manager